Filed 1/13/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re M.B., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B295284<br>(Super. Ct. No. YJ39017)<br>(Los Angeles County) |
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>M.B.,<br><br>   Defendant and Appellant. | |

Does "*Dueñas*" apply to a mandatory minimum juvenile restitution fine? (*People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).) No. This celebrated or denigrated case has its followers and detractors at the Court of Appeal. (See, e.g., *People v. Belloso* (2019) 42 Cal.App.5th 647.) Here, Dueñas attempts to rear its head in juvenile jurisprudence. As we shall explain, even if this case is "good law," it does not apply to a mandatory minimum juvenile restitution fine.

M.B. appeals a disposition order entered after the juvenile court sustained five petitions (Welf. & Inst. Code, § 602)[1] for, inter alia, first degree residential burglary. (Pen. Code, § 459.) The trial court declared appellant a ward of the court, placed him in a camp community program, and ordered him to pay the mandatory minimum $100 restitution fine. (§ 730.6, subd. (b)(1).)

Appellant claims that ordering him to pay the $100 restitution fine violates his due process rights because the trial court did not determine whether he had the financial ability to pay such a fine.

We do not agree. Appellant was ordered to pay the mandatory minimum restitution fine allowable under section 730.6, subdivision (b)(1). The statute provides that in imposing a section 730.6 fine, the trial court "shall consider any relevant factors including, but not limited to, the minor's ability to pay . . . ." (§ 730.6, subd. (d)(1).) It further provides that "[t]he consideration of minor's ability to pay may include his . . . future earning capacity" and "[the] minor shall bear the burden of demonstrating a lack of his . . . ability to pay." (*Id.*, subd. (d)(2); see also § 730.7, subd. (a) [future earning capacity of minor's parent or guardian may also be considered].) The presumption is, and we believe, that the juvenile court followed these legislative directions.

*Dueñas* involved a mandatory adult restitution fine (Pen. Code, § 1202.4) and assessments (Gov. Code, § 70373; Pen. Code, § 1465.8) in an adult criminal matter. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1161-1162.) After Dueñas was convicted of driving with a suspended license and granted probation, she

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

requested a hearing on her ability to pay the fine and assessments. The trial court determined that the fine and assessments were mandatory and rejected defendant's constitutional arguments. (*Id.* at p. 1163.) The Court of Appeal reversed, concluding that due process requires that a trial court "conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes assessments under Penal Code section 1465.8 or Government Code section 70373. (*Dueñas,* at p. 1164.) The court further held that the restitution fine imposed under Penal Code section 1202.4 posed constitutional concerns because the trial court was precluded from considering defendant's ability to pay when imposing the minimum fine authorized by the statute. To avoid this constitutional problem, the *Dueñas* court held that execution of the mandatory fine under Penal Code section 1202.4 must be stayed until defendant's ability to pay is determined. (*Dueñas,* at pp. 1172-1173.)

In reaching its conclusions, *Dueñas* pointed out that the defendant was indigent, homeless, unemployed, had two young children, and had cerebral palsy. (*Dueñas, supra,* 30 Cal.App.5th at p. 1160.) She was receiving state financial aid and food stamps. (*Id.* at p. 1161.) It relied upon Ninth Circuit Court of Appeal authority which pointed out that punitive fines and fees "'can lay a debt trap for the poor. . . .'" (*Id.* at p. 1163.)

Appellant argues, by analogy, that the mandatory minimum restitution fine must be stayed pending a hearing on his ability to pay. But the *Dueñas* court's analysis of criminal restitution fines under Penal Code section 1202.4 is inapplicable to restitution fines imposed in the juvenile court under section 730.6. Section 730.6 is similar, but not identical, to Penal Code section 1202.4. It requires that the juvenile court impose a

3

restitution fine of not less than $100 and not more than $1,000 on any minor found to be a person described in section 602 by reason of the commission of one or more felony offenses. (§ 730.6, subd. (b)(1).) Like its criminal counterpart, the juvenile restitution statute provides for a mandatory minimum restitution fine in felony cases and states that the fine "shall be imposed regardless of the minor's inability to pay." (§ 730.6, subd. (c), underlining added; compare Pen. Code, § 1202.4, subds. (b) & (c).) This seems to be pretty straightforward. The Legislature also expressly says: "[a] separate hearing for the [restitution] fine shall not be required." (§ 730.6, subd. (b)(1).) This also seems pretty straightforward. None of the considerations that were at play in *Dueñas* (ante, pp. 2-3) are present here.

To the extent that *Dueñas* purports to state a rule of California criminal procedure, we question whether the Court of Appeal, as opposed to the Supreme Court, has the authority to do so. We are not bound by a sister appellate court opinion and we are obligated to follow our California Constitution, Article 6, § 13. We cannot say that a $100 mandatory juvenile restitution fine resulted in a miscarriage of justice. And, we decline to now order the further expenditure of scarce judicial resources to "chase" a $100 mandatory minimum restitution fine.

In our view, the time for a financial hearing should be when someone tries to enforce compliance with a "criminal" sanction. At that time, inability to pay by reason of indigency is a relevant consideration. Finally, we observe that a restitution fine may serve as an appropriate rehabilitative measure for a minor.

The judgment (order imposing a $100 restitution fine) is affirmed.

CERTIFIED FOR PUBLICATION.


YEGAN, Acting P. J.


We concur:


PERREN, J.


TANGEMAN, J.

5

YEGAN, J., Concurring:

I obviously concur with the majority opinion. I am reminded of a course presented at the 2014 Annual Appellate Court Justice Institute on judicial opinion writing. The course written materials posed two questions which are here pertinent: "How will your opinion be misused and have you created more problems than you have solved? Ask yourself how a creative attorney can cite your case for a proposition you never considered?"

If the *Dueñas* court intended that the rule declared therein applied, "across the board," to every person sentenced where an appeal was pending, it called for limited reversals in most, if not all, criminal cases. This would entail an expenditure of judicial time and financial resources with little practical benefit. The criminal and juvenile justice systems do not need an additional burden added by the *Dueñas* court. If it was meant to correct the obvious miscarriage of justice suffered by Ms. Dueñas, and factually similar cases, then it is fair to say that no one on the Court of Appeal would disagree.

In my view, the *Dueñas* court did create more problems than it solved and creative attorneys have had a field day. We are deluged with the *Dueñas* issue and it has become what the late Justice William Masterson used to describe as the "issue de jour."

Here, we are asked to reverse for a hearing on the ability to pay the minimum restitution fine of $100. This would entail a bus trip from juvenile camp to court for a hearing that may, perhaps, result in a lessening of a restitution fine. We assume that at such adversarial hearing, the minor would be represented by court appointed counsel. Perhaps there would be live-witness

1

testimony.  The resulting hearing would be an exaltation of form over substance.  How much time and money should the juvenile justice system spend to "chase" this $100?  My answer is, none.  The latin phrase, "de minimis non curat lex" comes to mind.

 CERTIFIED FOR PUBLICATION.


 YEGAN, Acting P. J.

J. Christopher Smith, Judge

Superior Court County of Los Angeles

_____

Mary Bernstein, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Steven E. Mercer, Acting Supervising Deputy Attorney General, Esther P. Kim, Deputy Attorney General, for Plaintiff and Respondent.